**LUCAS AUTOMOTIVE ENGINEERING, INC., Plaintiff–Appellant,**

v.

**BRIDGESTONE/FIRESTONE, INC.; The Firestone Tire and Rubber Company, of New Zealand, Ltd., Defendants,**

and

**Coker Tire Company, Defendant–Appellee.**

No. 95–56706.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 1997.

Decided March 31, 1998.

Maxwell M. Blecher, John E. Andrews, Blecher & Collins, P.C., Los Angeles, California, for plaintiff-appellant.

Richard W. Bethea, Jr., Stophel & Stophel, P.C., Chattanooga, Tennessee, for defendant-appellee.

Before: O'SCANNLAIN and TASHIMA, Circuit Judges; WHALEY,* District Judge.

O'SCANNLAIN,** Circuit Judge:

We must decide whether a distributor and downstream purchaser of vintage automobile tires has standing to bring an antitrust action under the Clayton Act against a competitor and supplier for damages and divestiture.

I

Coker Tire Company, Inc. ("Coker Tire") and Lucas Automotive Engineering, Inc. ("Lucas Automotive") sell vintage automobile tires to customers worldwide. Vintage tires are different from tires used on modern automobiles in terms of their size, dimensions, structure, design and manufacturing. They are replicas of the tires which originally were sold on vintage, antique and collector cars, and are no longer made for use on modern cars. Vintage tires are typically bias ply tires, whereas modern automobile tires are radial construction. Vintage tires are distributed through specialty tire channels of distribution.

Lucas alleges that the relevant market for purposes of this action is limited to original equipment ("OE") major brand vintage tires. These tires bear the trademarks of tires which originally were sold on vintage cars. For American cars, the OE major brands in vintage tires are Firestone, B.F. Goodrich, U.S. Royal and Goodyear. Coker Tire is the exclusive supplier for all of these OE brands except Goodyear, which comprises less than 10% of the market. There are approximately 40,000 tire dealers in the United States for the retail sales of OE major brand vintage tires. Following the district court, we assume that the relevant market is limited to original equipment brand name vintage tires. *See* Order Granting Defendant's Motion for Summary Judgment at 3 n. 1.

Coker Tire is the world's largest supplier of vintage tires, with distributors in 27 countries and distribution sites in Chattanooga, Tennessee and Santa Fe Springs, California. There are more than 25 brands of vintage tires being sold in the world. Lucas Automotive, headquartered in Long Beach, California, initiated the Firestone Vintage Tire Program in the 1970s, operating since then as the importer and distributor of Firestone vintage tires worldwide. Prior to August 7, 1991, both Coker Tire and Lucas Automotive distributed Firestone brand vintage tires: Coker Tire distributed "wide ovals," vintage tires for "muscle cars" (those made primarily in the 1960s and 1970s), while Lucas Automotive distributed Firestone tires for antique cars. Firestone Tire and Rubber Company of New Zealand, Inc. ("FNZ"), a subsidiary of Bridgestone/Firestone, Inc. ("BFI") and operating under a license agreement with BFI, manufactured and sold the Firestone vintage tires in New Zealand, supplying them to Lucas Automotive for distribution and sale to end users. Because vintage tire production became unprofitable for FNZ in the late 1980s, it decided to cease manufacturing vintage tires in New Zealand. BFI sought to relocate production to a new facility in North America.

On August 7, 1991, BFI invited Lucas Automotive and Coker Tire to submit bids for an exclusive license to manufacture and distribute Firestone brand vintage tires worldwide. BFI limited the bid process to these two companies because they were the two principal sellers of vintage tires and because it was familiar with both organizations. BFI informed Lucas Automotive and Coker Tire of its goals in seeking bids: (1) to maximize the Firestone brand's exposure and to insure the continuity of the business; (2) to move production from New Zealand to North America; and (3) to organize for efficiency and profitability to Firestone. Lucas Automotive resisted the bid process; its final proposal lacked the required financial statements and business and credit references.

In January 1992, BFI selected Coker Tire as its new worldwide manufacturer and distributor of Firestone vintage tires. With the

---

* The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

** Writing for the court except as to Part II.B.2.

exclusive Firestone distributorship, Coker Tire now controls approximately 75% of the vintage tire market and 90% of the original equipment market, with exclusive rights to all but one of the major brands.[1] BFI contends that Coker Tire's bid proposal was superior to Lucas Automotive's for several reasons. First, Coker Tire's multi-brand marketing approach was consistent with the approach used by BFI at its own stores. Second, the license fee proposed by Coker Tire was based on a sliding percentage which decreased as sales went up, providing an incentive for Coker Tire to increase volume which was consistent with BFI's goal of greater name recognition. Lucas Automotive's license fee, on the other hand, was based on a straight percentage of cost of goods which provided no incentive in reduced expense for Lucas Automotive to increase its sales volume. Third, Corky Coker demonstrated "far superior public relations skills" than Stanley Lucas. And finally, Coker Tire had several management-level employees whereas Stanley Lucas was the sole management-level employee at Lucas Automotive. On April 2, 1992, BFI entered into a License & Lease Agreement with Coker Tire, giving it permission to manufacture and to distribute certain classic-vintage tires exclusively worldwide in accordance with BFI's trademarks and patents on classic-vintage Firestone brand tires.

On August 20, 1993, Lucas Automotive filed an action against BFI, FNZ and Coker Tire. The complaint contained six different counts, with each containing a separate cause of action: (1) antitrust violations based on § 2 of the Sherman Act, 15 U.S.C. § 2, and § 7 of the Clayton Act, 15 U.S.C. § 18; (2) breach of express contract; (3) breach of implied contract; (4) fraud; (5) tortious interference with prospective economic advantage; and (6) bad faith denial of existence of contract. Only the first count pertained to Coker Tire. The complaint alleged that Coker Tire, BFI and FNZ had conspired to monopolize the worldwide market for the "marketing and sale" of vintage automobile tires in violation of § 2 of the Sherman Act.

The complaint also alleged that Coker Tire's acquisition of vintage tire molds and worldwide distribution rights from BFI violated § 7 of the Clayton Act, in that the acquisition would substantially lessen competition and create a monopoly in the marketing and sale of these tires throughout the world.

On December 19, 1994, BFI and FNZ filed a motion for summary judgment with respect to all the claims against them. On February 21, 1995, the district court awarded summary judgment to BFI and FNZ on all counts pertaining to them, including the alleged conspiracy violations by BFI and FNZ of § 2 of the Sherman Act and § 7 of the Clayton Act contained in the first count. The district court ruled that there was no specific intent to monopolize on the part of BFI and FNZ and that there were legitimate business reasons for BFI to prefer Coker Tire over Lucas Automotive as its exclusive licensee to manufacture and distribute Firestone vintage tires. Lucas Automotive did not appeal from this ruling. Thereafter, only that part of the first count pertaining exclusively to Coker Tire remained pending before the district court.

On June 27, 1995, Coker Tire, the remaining defendant, filed its summary judgment motion. The district court granted summary judgment in favor of Coker Tire on October 17, 1995. It concluded that: (1) Lucas Automotive has not produced evidence to show that its losses flow from any alleged monopoly by Coker Tire; (2) the fact that Coker Tire has the exclusive distribution rights to other major brand vintage tires does not transform Lucas Automotive's unsuccessful bid for the Firestone line into an antitrust injury; (3) Lucas Automotive has not produced any evidence to show that Coker Tire has in fact raised prices on the brand name vintage tires it distributes; and (4) Lucas Automotive also lacks standing to bring this claim because it has not actually purchased any tires from Coker Tire.

Lucas Automotive timely appealed.

---

1. Coker Tire disputes this market percentage: "Arriving at a determination of market share in the vintage tire business would be almost impossibly difficult, requiring as it would the contact-

ing of 'every single seller ... [for the purpose of] get[ting] their gross [sales] numbers all over the world.'" Appellee's Brief at 12 (internal citation omitted).

## II

Lucas Automotive alleges that Coker Tire violated § 7 of the Clayton Act when it acquired the exclusive right to manufacture and to distribute Firestone brand vintage tires worldwide. Section 7 provides in pertinent part:

No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where ... the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

15 U.S.C. § 18. Pursuant to that allegation, Lucas Automotive seeks to recover treble damages and to compel divestiture of the Firestone distributorship.

Lucas Automotive is both a potential competitor of Coker Tire at the distributor level and a purchaser at the subdistributor level. Therefore, we must ask whether Lucas Automotive has either competitor standing or purchaser standing to assert either a treble damages claim or a divestiture claim against Coker Tire.

### A

We first examine whether Lucas Automotive has standing to bring an action for treble damages against Coker Tire, either as a competitor of Coker Tire at the distributor level or as a downstream purchaser. The treble damages provision of the Clayton Act, § 4, reads in material part:

[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in contro-

versy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15(a). Section 4 of the Clayton Act thus provides a private cause of action for parties injured by violations of section 7 of the Act.

■ As we noted in *Amarel v. Connell,* 102 F.3d 1494 (9th Cir.1997), the Supreme Court has identified several factors courts are to consider in determining whether an antitrust plaintiff has standing to sue. As a threshold matter, the court must determine whether the plaintiff has met the requirements for standing under Article III—that is, whether the plaintiff "has suffered an injury which bears a causal connection to the alleged antitrust violation." *Amarel,* 102 F.3d at 1507. If the plaintiff meets the requirements for standing under Article III, the court must then determine whether the plaintiff also meets "the more demanding standard for *antitrust* standing." *Id.* (emphasis added). In deciding whether antitrust standing has been established, courts are to consider: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *Id.* (citing *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 535, 103 S.Ct. 897, 907, 74 L.Ed.2d 723 (1983)).

### 1

We first examine whether Lucas Automotive has standing under § 4 as a competitor of Coker Tire at the distribution level.[2] Lucas Automotive alleges that Coker Tire's purchase of the manufacturing and distribution rights for Firestone vintage tires increased Coker Tire's share of the vintage tire market from 49% to 74%, and increased Coker Tire's

---

**2.** At oral argument, counsel for Lucas Automotive stated:

Judge Davies did note on page 7 of his memorandum decision granting summary judgment: "Lucas has also been unable to re-enter the market for the original equipment major brand vintage tires because it has been unable to

secure the exclusive distributor rights to another major brand vintage tire. Lucas argues that these losses flow from the acquisition of monopoly power by Coker." So he understands what we're saying—that we've been excluded from effective, meaningful participation in the market at the distribution level.

share of the original equipment vintage tire market to 90%. Lucas Automotive claims that it has been injured by Coker Tire's gain in market share because it has been excluded from participating in the vintage tire market at the distribution level.

■ In order to demonstrate that it has suffered "antitrust injury," Lucas Automotive must prove that its alleged injury "flows from that which makes defendants' acts unlawful." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113, 107 S.Ct. 484, 491, 93 L.Ed.2d 427 (1986) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977)). In *Brunswick*, three bowling centers brought suit against Brunswick, one of the two largest manufacturers of bowling equipment in the United States, claiming its acquisition of a large number of failing bowling centers violated antitrust laws. The plaintiffs alleged that the acquisitions might substantially lessen competition or tend to create a monopoly in violation of § 7 of the Clayton Act and thus sought treble damages under § 4 and a divestiture order under § 16. *See id.* at 480–81, 97 S.Ct. at 693–94.

The Court held that loss incurred because of an unlawful acquisition that would also have been incurred had the acquisition been lawful is not antitrust injury because it does not flow from that which makes the defendant's conduct unlawful. *See id.* at 487–88, 97 S.Ct. at 696–97. The Court explained:

> If the acquisitions here were unlawful, it is because they brought a "deep pocket" parent into a market of "pygmies." Yet respondents' injury—the loss of income that would have accrued had the acquired centers gone bankrupt—bears no relationship to the size of either the acquiring companies or its competitors. Respondents would have suffered the identical "loss"—but no compensable injury—had the acquired centers instead obtained refinancing or been purchased by "shallow pocket" parents.... Thus, respondents' injury was not of "the type that the statute was intended to forestall."

*Id.* at 487, 97 S.Ct. at 697 (internal citations omitted).

■ As a competitor of Coker Tire, Lucas Automotive's alleged injury is that it has been foreclosed from serving as a primary-line supplier of vintage tires. However, Lucas Automotive would have suffered the same injury had a small business acquired the exclusive right to manufacture and to distribute Firestone tires. Because it cannot demonstrate "antitrust injury" as defined in *Brunswick*, Lucas Automotive lacks competitor standing to sue Coker Tire for treble damages under § 4. *See Brunswick*, 429 U.S. at 487–89, 97 S.Ct. at 696–98.

### 2

■ Lucas Automotive also claims to have standing to assert its § 4 claim as a downstream purchaser of vintage tires. Lucas Automotive alleges that it must now purchase tires from Coker Tire or another primary-line distributor in order to resell them at the subdistributor or retail level. However, since Coker Tire acquired the right to manufacture and to distribute Firestone tires on August 7, 1991, Lucas Automotive has not purchased any tires from Coker Tire. Instead, Lucas Automotive has bought tires from Universal Tire Company, which in turn purchases from Coker Tire.

Construing § 4 of the Clayton Act, the Supreme Court has held that an indirect or remote purchaser lacks standing to seek damages relief against the manufacturer for alleged violations of federal antitrust laws. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728–29, 97 S.Ct. 2061, 2065–66, 52 L.Ed.2d 707 (1977); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 492–93, 88 S.Ct. 2224, 2231, 20 L.Ed.2d 1231 (1968). The indirect purchaser rule serves to avoid the complications of apportioning overcharges between direct and indirect purchasers and to eliminate multiple recoveries. *See Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208, 212, 110 S.Ct. 2807, 2812–13, 2814–15, 111 L.Ed.2d 169 (1990). The Supreme Court has applied the indirect purchaser rule in § 4 cases involving section 1 of the Sherman Act, *see Illinois Brick*, 431 U.S. at 728–29, 97 S.Ct. at 2065–66, and section 2 of the Sherman Act, *see Hanover Shoe*, 392 U.S. at 492–94, 88 S.Ct. at 2231–32. Although the Supreme Court has never applied the indirect purchaser rule in a § 4 case involving

§ 7 of the Clayton Act, its decisions construing the scope of the rule suggest that it applies to § 4 actions generally. *See Utili-Corp United,* 497 U.S. at 217, 110 S.Ct. at 2817 (1990) ("[W]e think it an unwarranted and counterproductive exercise to litigate a series of exceptions [to the indirect purchaser rule]. Having stated the rule in *Hanover Shoe,* and adhered to it in *Illinois Brick,* we stand by our *interpretation of § 4.*") (emphasis added); *Illinois Brick,* 431 U.S. at 729, 97 S.Ct. at 2066 ("[W]e decline to abandon the *construction given § 4* in *Hanover Shoe*—that the overcharged direct purchaser, and not others in the chain of manufacture or distribution, is the party 'injured in his business or property' within the meaning of the section ....") (emphasis added); *see also Alaska v. Chevron Chemical Co.,* 669 F.2d 1299, 1300–01 (9th Cir.1982) (applying indirect purchaser rule to § 7 claim). Therefore, we hold that, as an indirect purchaser, Lucas Automotive lacks standing to bring a § 4 action charging Coker with a violation of § 7 of the Clayton Act.[3]

Lucas Automotive argues that it falls within the exception to the indirect purchaser rule for sales made pursuant to "cost-plus" contracts. *See Illinois Brick,* 431 U.S. at 735–36, 97 S.Ct. at 2069–70. We disagree. *Illinois Brick* recognized that pass-on damages can be easily measured when a direct purchaser sells to his customers under a "pre-existing cost-plus contract." *Id.* However, Lucas Automotive offers no evidence that its purchases from Universal Tire Company were made pursuant to a fixed-quantity, cost-plus contract entered into prior to Coker Tire's obtaining the Firestone distribution rights.

### B

We next examine whether Lucas Automotive has "antitrust standing" to bring an action to compel divestiture of the Firestone distributorship acquired by Coker Tire. The injunctive provision of the Clayton Act, § 16, reads in material part:

Any person, firm, organization or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections two, three, seven and eight of this Act, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue ....

15 U.S.C. § 26.

To maintain an antitrust divestiture suit, a private plaintiff must generally meet all the requirements that apply to the damages plaintiff, except that the injury itself need only be threatened, damage need not be quantified, and occasionally a party too remote for damages might be granted an injunction. *See* 2 Areeda & Hovenkamp, *Antitrust Law* ¶ 360, at 193–94. Although the Supreme Court did not address equity actions when it defined "antitrust injury" in *Brunswick,* the Court held in *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), that threatened antitrust injury was a prerequisite to equitable relief. *Id.* at 113, 107 S.Ct. at 491. Comparing § 16 of the Clayton Act with § 4, it said:

Sections 4 and 16 ... are best understood as providing complementary remedies for a single set of injuries ... [and it] would be anomalous ... to read the Clayton Act to authorize a private plaintiff to secure an injunction against a threatened injury for which he would not be entitled to compensation if the injury actually occurred.

*Id.* at 112–13, 107 S.Ct. at 490. The *Cargill* Court further acknowledged that "the legislative history of Section 16 is consistent with the view that Section 16 affords private plaintiffs injunctive relief only for those injuries

---

**3.** Even if the indirect purchaser rule did not apply in this case, Lucas Automotive has not shown that it has paid higher prices as an indirect purchaser as a result of Coker Tire's acquisition of the Firestone line. We examine whether Lucas Automotive has succeeded in demonstrating that it is *threatened* with higher prices as an indirect purchaser in Part II.B.2.

cognizable under Section 4." *Id.* at 112, 107 S.Ct. at 490.

We now examine whether Lucas Automotive has standing to bring a divestiture suit either as a competitor of Coker Tire or as a downstream purchaser of vintage tires.

### 1

■ Lucas Automotive lacks standing to assert a § 16 claim as a competitor of Coker Tire for the same reason that it lacks competitor standing to assert a § 4 claim. Lucas Automotive alleges that, as a result of Coker Tire's acquisition of the Firestone line, it is threatened with being permanently excluded from competing at the distributor level.[4] However, read in conjunction with *Cargill*, *Brunswick* compels the conclusion that, because Lucas Automotive cannot show that it would not be similarly threatened had a small business acquired the right to manufacture and to distribute Firestone tires, Lucas Automotive lacks competitor standing to sue for divestiture under § 16. *See Brunswick*, 429 U.S. at 487, 97 S.Ct. at 696–97; *Cargill*, 479 U.S. at 113, 107 S.Ct. at 491; *see also* 2 Areeda & Hovenkamp, *Antitrust Law* ¶ 349.2a, at 480–81 ("Standing is inappropriate when the plaintiff is a competitor challenging the expansive or typically competitive behavior or a rival.").

### 2

TASHIMA,*** Circuit Judge, with whom WHALEY, District Judge, concurs:

The district court, without distinguishing Lucas Automotive's equitable claim from its treble damage claim, granted Coker Tire summary judgment on both claims because "Lucas has not produced any evidence to show that Coker has in fact raised these prices [on brand name vintage tires]. Therefore, it has not suffered any actual injury." Order Granting Defendant's Motion for Summary Judgment at 8 (Oct. 17, 1995) (citing *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir.1995)). It further held that "Lucas also lacks standing to bring this claim because it has not actually purchased

tires from Coker. Lucas does not buy its Firestone vintage tires directly from Coker." Citing *Illinois Brick*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707, the district court held that "Lucas must buy directly from Coker to have standing to sue for any price increases Coker puts into effect as a result of its alleged monopoly." The district court concluded the portion of its opinion on antitrust standing: "The Court therefore finds that Lucas has not suffered an antitrust injury because its losses are not due to any anticompetitive acts by Coker. Therefore Lucas lacks standing to sue under the antitrust acts." The district court erred in failing to distinguish Lucas Automotive's standing to sue for equitable relief under § 7 of the Clayton Act from its standing to sue for treble damages.

■ First, indirect purchasers are not barred from bringing an antitrust claim for injunctive relief against manufacturers. *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 856 (3d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 86, 136 L.Ed.2d 42 (1996); *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1167 (5th Cir.1979); *Mid–West Paper Prods. Co. v. Continental Group, Inc.*, 596 F.2d 573, 590–94 (3d Cir.1979); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 497 F.Supp. 218, 228–29 (C.D.Cal.1980). Second, an antitrust plaintiff seeking injunctive relief need only show a *threatened* injury, not an actual one. *See* 2 Areeda & Hovenkamp, *Antitrust Law* ¶ 360, at 193–94.

■ Lucas Automotive forthrightly states in its opening brief that "this is not a 'terminated distributor' case—Lucas does not claim injury flowing from the loss of the Firestone distribution rights against Coker ... Lucas' injury flows from the fact that it is a purchaser and reseller of vintage original equipment tires and Coker now controls the supply of vintage tires. *Lucas thus is forced to operate in a market controlled by a monopo-*

---

4. At oral argument, Lucas Automotive's counsel stated, "If the defendant is able to exclude you through its pricing practices from competing, then you lose sales." Because Lucas Automotive has not specifically alleged that Coker Tire has

engaged or threatens to engage in predatory pricing, we decline to address this issue on appeal.

*** Writing for the court as to Part II.B.2 only.

*list rather than by market forces."* (Emphasis added.)

The undisputed facts on summary judgment showed that after its acquisition of the Firestone vintage tire line, Coker Tire controlled 75 percent of the vintage tire market, and 90 percent of the original equipment market. Coker Tire controlled all major American vintage tire brands, except one, Firestone, B.F. Goodrich and U.S. Royal. Kelsey Tire Company, with less than 10 percent of the market, controlled the remaining Goodyear brand. Goodyear vintage tires, however, are limited in terms of available sizes.

The undisputed facts also established that there are insurmountable barriers to entry into the primary-line market for vintage tires, particularly the original equipment market. This is because what is acceptable to the consuming public as a vintage tire brand, by definition, was fixed many years ago. All of the trademarks and the tire molds necessary to manufacture vintage tires have been committed to existing manufacturers. *See generally Rebel Oil,* 51 F.3d at 1439 (analyzing barriers to entry factor).

These undisputed facts, at the summary judgment stage, are sufficient fairly to support Lucas Automotive's claim that "Coker has monopoly power in the marketing and sale of vintage tires in the United States with the power to exclude competition and raise prices," *i.e.,* they make out a *prima facie* case. We held in *Rebel Oil* that a market share of 44 percent was "sufficient as a matter of law to support a finding of market power, if entry barriers are high and competitors are unable to expand their output in response to supracompetitive pricing." *Id.* at 1438 (footnote omitted). *Accord Oahu Gas Serv., Inc. v. Pacific Resources Inc.,* 838 F.2d 360, 366 (9th Cir.1988) ("A firm with a high market share may be able to exert market power in the short run, but '[s]ubstantial market power can persist only if

there are significant and continuing barriers to entry.' ") (citation omitted).

It is a fair inference from the facts on summary judgment that, with the acquisition of the Firestone line of vintage tires, Coker Tire controls the supply of original equipment vintage tires; there no longer is virtually any competition at the primary level since Coker has a 90% market share; there are insurmountable barriers to entry; and it may be inferred that the sole remaining competitor in the original equipment vintage tire market, Kelsey Tire Company, is unable to increase output since the Goodyear brand of vintage tires controlled by Kelsey is limited in terms of size.[5] Coker Tire can now control prices and output, and exclude competition. Section 7 prohibits an acquisition the effect of which "may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. Lucas Automotive has shown, *prima facie,* that Coker Tire's conduct threatens "substantially to lessen competition" and "tends to create a monopoly" at the primary line level of the vintage tire market. That is precisely the antitrust harm § 7 was intended to protect against. As the Supreme Court has noted:

> Indeed, the evident import of Congress' reference to *"threatened* loss or damage" is not to constrict the availability of injunctive remedies against violations that have already begun or occurred, but rather to expand their availability against harms that are as yet unrealized.

*California v. American Stores Co.,* 495 U.S. 271, 282 n. 8, 110 S.Ct. 1853, 1859 n. 8, 109 L.Ed.2d 240 (1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 130 & n. 24, 89 S.Ct. 1562, 1580 & n. 24, 23 L.Ed.2d 129 (1969)). *See also Brown Shoe Co. v. United States,* 370 U.S. 294, 318 n. 32, 82 S.Ct. 1502, 1520 n. 32, 8 L.Ed.2d 510 (1962) (recognizing that § 7 "was intended to reach incipient monopolies and trade restraints outside the scope of the Sherman Act").

---

5. The dissent faults Lucas Automotive for not having offered "a shred of evidence as to the cross elasticity of demand between original equipment vintage tires of different sizes." What there is not a shred of evidence on is that there is any substitutibility between original equipment vintage tires of different sizes. Moreover, in these circumstances, the burden to show cross elasticity of demand to defeat plaintiff's *prima facie* case would seem to fall on Coker Tire. Lucas Automotive should not be required to prove a negative—the non-existence of a cross elasticity of demand.

We conclude that Lucas Automotive, as a competitor at the secondary level, *i.e.*, as a customer in a market controlled by a monopolist, has standing to assert a § 7 claim for equitable relief, including divestiture, under § 16. It established a *prima facie* case, both that it was an active participant in the vintage tire market and that Coker Tire's conduct in that market violated § 7. This showing was thus sufficient to avoid summary judgment on Lucas Tire's Clayton Act § 7 claim for equitable relief.

### III

We affirm the district court's grant of summary judgment dismissing Lucas Automotive's claim for damages under § 4 of the Clayton Act. As for Lucas Automotive's claim for equitable relief under § 16, we reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion. Each side shall bear its own costs on appeal.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

O'SCANNLAIN, Circuit Judge, dissenting only as to Part II.B.2.

I respectfully dissent from Part II.B.2 of the opinion, written by Judge Tashima.

The majority holds that Lucas Automotive has consumer standing to assert a section 7 claim for equitable relief, including divestiture, under section 16 of the Clayton Act. However, our decision in *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir.1995), viewed in conjunction with the Supreme Court's decision in *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), compels the opposite conclusion.

As the Supreme Court held in *Cargill*, in order to establish antitrust standing to sue for divestiture under section 16 of the Clayton Act, a plaintiff is required to "allege threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Cargill*, 479 U.S. at 113, 107 S.Ct. at 491 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977)). The majority concludes that, as a purchaser

of tires at the subdistributor level, Lucas Automotive is threatened with antitrust injury resulting from Coker Tire's acquisition of market power at the distributor level. I respectfully disagree with the majority's conclusion, as it conflicts with our decision in *Rebel Oil.*

In *Rebel Oil*, we held that market power may be demonstrated in one of two ways. First, the plaintiff may offer "direct evidence of the injurious exercise of market power." *Id.* at 1434. Lucas Automotive offers no direct evidence of a threat of the injurious exercise of market power by Coker Tire.

Second, the plaintiff may offer "circumstantial evidence pertaining to the structure of the market." *Id.* To demonstrate market power circumstantially, a plaintiff must: "(1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry *and show that existing competitors lack the capacity to increase their output in the short run.*" *Id.* at 1434 (emphasis added).

The majority concludes that, after its acquisition of the right to distribute Firestone tires, Coker Tire possessed market power at the distributor level. However, although the majority does offer support for its conclusions that Coker Tire owns a dominant share of the relevant market and that there are significant barriers to entry, it fails to point to evidence in the record sufficient to demonstrate that Coker Tire's competitors, including Kelsey Tire, lack the capacity to expand their output in response to a price increase by Coker Tire.

Lucas Automotive argues in its brief that "Coker ... has the power to restrict output and raise prices without a competitive response, and to exclude competition." In support of this assertion, Lucas Automotive cites only a conclusory statement by Stanley Lucas. However, conclusory allegations unsupported by factual data are insufficient to defeat a motion for summary judgment. *See Angel v. Seattle–First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir.1981).

The only support that the majority offers for its tenuous (but essential to its holding) conclusion that Kelsey Tire "lack[s] the capacity to increase [its] output in the short

run," *Rebel Oil,* 51 F.3d at 1434, is that "the Goodyear brand of vintage tires controlled by Kelsey is limited in terms of size." *See* Majority Opinion at 2898. Lucas Automotive has offered not a shred of evidence as to the cross elasticity of demand [1] between original equipment vintage tires of different sizes. Consequently, it is difficult to understand (based on the record before us) how the fact that Coker Tire distributes a greater range of tire sizes than Kelsey Tire suggests that Kelsey Tire cannot "increase [its] output in the short run" following a price increase by Coker Tire.[2] *See Rebel Oil,* 51 F.3d at 1434. Indeed, the majority's analysis only seems to underscore why Lucas Automotive failed to produce sufficient evidence to survive summary judgment.

I would affirm the district court's holding that Lucas Automotive lacks standing under section 16 of the Clayton Act.

---

1. The cross elasticity of demand measures the percentage change in the quantity of a good demanded for each one-percent change in the price of a substitute good. *See* H. Hovenkamp, *Economics and Federal Antitrust Law* ¶ 1.1, at 62 (1985).

2. I do not take the majority's analysis as challenging the district court's conclusion that the relevant market is that of original equipment vintage tires, as distinguished from original equipment vintage tires of a particular size.