[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#101) CT Page 12446
The plaintiff Andrew Vacco (Vacco) is a Connecticut resident who purchased from a Staples store in Wallingford, Connecticut, an Intel-based personal computer (PC) with a preinstalled Microsoft Windows 98 operating system. He now claims antitrust and unfair trade practice violations against the defendant Microsoft Corporation (Microsoft)
Vacco seeks to recover damages for himself and on behalf of a purported class of similarly-situated Connecticut residents who allegedly have paid a "monopoly price" for Windows 98,[1] "in excess of what Microsoft would have been able to charge in a competitive market." Complaint, ¶ 5.[2] The complaint is asserted in three counts: violation of the Connecticut Antitrust Act, General Statutes § 35-24 et seq. (count I), and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq, for unfair method of competition (count II) and unfair acts or practices (count III). Microsoft moves to strike counts I, II and III for failure to state a claim for which relief may be granted. Microsoft contends that Vacco's claims are barred because the allegations of his complaint demonstrate that he is an indirect purchaser and therefore ineligible to recover under Connecticut antitrust law, and absent the right to recover under antitrust law, he has no right to recover under CUTPA. Vacco has opposed the motion to strike.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted . . . (Citation omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270, 709 A.2d 558 (1998). "A motion to strike admits all facts well pleaded." Parsons v. United Technologies Corp., 243 Conn. 66,68, 700 A.2d 655 (1997). "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the complaint. . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.)Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149
(1990). "[The motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v.CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "The court must construe the facts in the complaint most favorably to the plaintiff."Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293
(1997). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . ." (Citation omitted; internal quotation marks omitted.) Id. CT Page 12447
In count I, Vacco claims damages by way of a private right of action for antitrust violations pursuant to General Statutes § 35-27.[3]
The Connecticut Antitrust Act expressly requires that the act be construed so as to conform with federal antitrust decisions. General Statutes § 35-44b ("It is the intent of the General Assembly that in construing sections 35-24 to 35-46, inclusive, the courts of this state shall be guided by interpretations given by the federal courts to federal antitrust statutes.")
Microsoft's motion to strike relies on the principle of federal antitrust law holding that indirect purchasers do not have standing to assert a private cause of action. See Illinois Brick Co. v. Illinois,431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). The complaint inIllinois Brick was asserted under § 4 of the Clayton Act. It alleged that concrete block manufacturers had engaged in a combination and conspiracy to fix the price of concrete block in violation of federal antitrust law. The plaintiffs complained that concrete block manufacturers sold at monopoly prices to masonry contractors, who in turn sold the products to general contractors, who then incorporated the masonry structures into entire buildings and passed the overcharge to the plaintiffs in the bids submitted for those buildings. Illinois Brick,
supra, 431 U.S. 720 and 735. The amounts paid for concrete block by the plaintiffs allegedly totaled more than $3 million higher by reason of this price-fixing conspiracy. Id., 727. The court recognized that the only way in which the antitrust violation alleged could have injured the plaintiffs is if all or part of the overcharge was passed on to them by the masonry and general contractors, rather than being absorbed at the first two levels of distribution. Id. The court held that only those who purchased directly from the alleged monopolist had standing to bring a private cause of action for damages under federal antitrust law. Id., 728.
Similarly, Vacco complains for himself and purported class members that Microsoft has charged them in excess of what it would have been able to charge in a competitive market. Likewise, the complaint alleges that Vacco is an "indirect purchaser" because he bought his computer from a retailer (Staples) who bought its merchandise from a distributor or hardware manufacturer who paid Microsoft for a license to include the software in its computers. Significantly, the complaint fails to allege that Vacco or any one of the purported class members bought their Microsoft operating system directly from Microsoft.[4]
The holding in Illinois Brick, that only direct purchasers have standing to bring a private cause of action under federal antitrust law, relies on several policy choices. First, the court wanted to avoid a CT Page 12448 serious risk of multiple liability for defendants. Second, the court understood the difficulty of determining the amount of overcharge passed from direct to indirect purchasers. The court also observed that:
 Permitting the use of pass-on theories under § 4 essentially would transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge — from direct purchasers to middlemen to ultimate consumers. However appealing this attempt to allocate the overcharge might seem in theory, it would add a whole new dimension of complexity to treble-damage suits and seriously undermine their effectiveness.
Id., 737. Thus, the court determined that the better choice was to limit recovery to direct purchasers on the basis that the antitrust laws would be enforced more effectively by concentrating the full recovery for the overcharge in the direct purchasers. Id., 733. The Supreme Court reaffirmed its Illinois Brick decision in Kansas v. Utilicorp United,Inc., 497 U.S. 199, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990) (imposed indirect purchaser rule in suits involving regulated public utilities that pass all of their costs to their customers.)
Recognizing that application of the Illinois Brick indirect purchaser rule to his antitrust claims would require their dismissal, Vacco correctly argues that Connecticut antitrust law is not preempted by federal law. In addition, he argues that nothing in federal antitrust law would prevent a state from allowing indirect purchasers to recover under the state's own antitrust laws. See California v. Arc America, 490 u.s. 93, 103, 109 S.Ct. 1661, 104 L.Ed 2d 86 (1989)
The court is not persuaded, however, that Connecticut antitrust law differs significantly from federal antitrust law in their mutual restriction of private causes of action to direct purchasers. Supporting this observation is our legislature's response to the numerous attempts to enact an "Illinois Brick repealer." While California and some other states have enacted such legislation, bills offered in Connecticut to repeal Illinois Brick (Senate Committee Bill Nos. 1159 (1981), 1119 (1983), 88 (1984), 825 (1987), and 7052 (1991)) have uniformly been rejected.[5]
In the absence of "Illinois Brick repealer" legislation, courts interpreting their own state antitrust statutes have dismissed indirect purchaser actions. See Blewett v. Abbott Labs, 938 P.2d 842, 845-46
(Wash.App. 1997); Stifflear v. Bristol-Meyers Squibb Co., 931 P.2d 471, CT Page 12449 475-76 (Colo.App. 1996); Abbott Labs v. Segura, 907 S.W.2d 503, 505-07
(Tex. 1995).
In litigation alleging state antitrust claims almost identical to Vacco's, such claims were dismissed under the authority of IllinoisBrick. See Weinberg v. Microsoft Corp., No. D-162, 526 (Dist.Ct. Tex., August 30, 2000); Arnold v. Microsoft Corp., No. 00-CI-00123 (Ky. Cir. Ct., July 21, 2000); Hindman v. Microsoft Corp., No. 00-1-0945-03 (Haw. Cir. Ct., July 20, 2000); Comes v. Microsoft Corp., No. CL82311, p. 14 (Iowa Dist. Ct., July 11, 2000); Daraee v. Microsoft Corp., No. 0004-03311 (Or. Cir. Ct., June 27, 2000); Krotz v. Microsoft Corp., No. A416361 (Nev. Dist. Ct. June 22, 2000).
Vacco is able to cite only one state court decision to support his position that the Illinois Brick indirect purchaser rule is not controlling, even in the absence of repealer legislation. See DanielSherwood et al v. Microsoft Corp. et al, No. 99 C-3562 (5th Cir. Ct., Davidson County, Tenn.) (filed under Tennessee antitrust law). He also concedes that the Tennessee statute (Tennessee Trade Practices Act, T.C.A. § 47-25-101 et seq. of the Tennessee Consumer Protection Act, T.C.A. § 47-18-101 et seq.) differs significantly from the Connecticut Antitrust Act. The Connecticut statute states on its face that judicial interpretation is to conform with federal antitrust law. "The legislative history of the [Connecticut Antitrust A]ct clearly establishes that it was intentionally patterned after the antitrust law of the federal government. . . . Accordingly, we follow federal precedent when we interpret the act unless the text of our antitrust statutes, or other pertinent state law, requires us to interpret it differently."[6]
(Citations omitted.) Westport Taxi Service, Inc. v. Westport TransitDistrict, 235 Conn. 1, 15-16, 664 A.2d 719 (1995). The Tennessee antitrust act, on the other hand, is intended to cover all commerce not covered by the federal statute, and the intention of the legislation was to insure that there would not be a void in any situation where federal law did not govern. Standard Oil Co. v. State, 117 Tenn. 618, 100 S.W. 705,710 (Tenn. 1907). Accordingly, Tennessee antitrust law is directed at intrastate commerce and is designed to cover violations that would not be encompassed under federal antitrust law. Id.
Vacco attempts to distinguish Illinois Brick by focusing on the license (EULA)[7] to which he and members of the purported class were compelled to agree before they were permitted to use the Windows 98 operating system. Because the software was not sold to him but merely licensed, Vacco contends that he cannot be an "indirect purchaser" within the meaning of Illinois Brick. The court finds, however, that the licensing agreement is merely a function of copyright law; it does not replace the economic reality of the indirect purchaser relationship on which the CT Page 12450Illinois Brick court focused its policy choices. The same three policy considerations leading to the Supreme Court's decision in IllinoisBrick, namely, exposure by defendants to a serious risk of overlapping recoveries, difficulty of determining the "pass-on" charge,[8] and more effective enforcement in private actions when the complaining party is a direct purchaser, apply equally under a licensing scheme. The Supreme Court drew the line, recognizing that limiting private enforcement to direct purchasers is the better policy choice, even while cognizant that "direct purchasers may sometimes refrain from bringing a treble-damages suit for fear of disrupting relations with their suppliers." IllinoisBrick v. Illinois, supra, 431 U.S. 746.
According to the Supreme Court, two very limited circumstances might permit an exception to the Illinois Brick bright line indirect-purchaser rule. Id., 736 and 750 n. 4. The first exists when the direct purchaser is owned or controlled by its customer, and the second involves a "pre-existing cost-plus contract." There is no reported decision, however, in which the United States Supreme Court has applied these exceptions, and they typically are rejected by federal courts. See LucasAutomotive Eng'g v. Bridgestone/Firestone, 140 F.3d 1228, 1234 (9th
Cir. 1998); In re: Brand Name Prescription Drugs Antitrust Litigation,123 F.3d 599, 605-06 (7th Cir. 1997); McCarthy v. Recordex Serv.,Inc., 80 F.3d 842, 852-55 (3d Cir. 1996); Illinois Exrel Burns v.Panhandle Eastern Pipeline Co., 935 F.2d 1469, 1476-79 (7th Cir. 1991); Collins v. International Dairy Queen, 59 F. Sup.2d 1305, 1311
(M.D. GA. 1999).
The pre-existing cost-plus contract relates to contractual relationships in which the quantity sold and the pass-on charges are determined by contract. This situation eliminates the problem of apportioning damages between the direct purchaser and the indirect end user, because by contract, the entire over-charge is passed on to the end user. This scenario is not alleged in Vacco's complaint.
The "ownership or control" exception, in which the manufacturer owns or controls the middleman, also is not alleged in this case. In the "ownership or control" situation, the economic reality is that there is only one sale. See Jewish Hosp. Ass'n v. Stewart Mechanical Enterprises,Inc., 628 F.2d 971, 975 (6th Cir. 1980). Again, the degree of control in this situation eliminates the problem of apportioning the "pass-on." Vacco does allege in his complaint at ¶ 57 that Microsoft's licensing practices with respect to Windows 98 create a functional economic unity between Microsoft, the original equipment manufacturers, and the distributors of upgrade CD ROMs, such that there is only one transaction between Microsoft and the direct end user. However, such conclusory allegations without facts to support them cannot overcome a motion to CT Page 12451 strike. See Mingachos v. CBS, Inc., supra, 196 Conn. 108. Not only is Vacco's relationship with the original equipment manufacturers not explained, there also is no mention in the complaint of the further layer of distribution involving retailers. Certainly, if Vacco had purchased Microsoft products directly from Microsoft. that simple fact would have been alleged.
Similarly, Vacco's argument that he has properly alleged a vertical price-fixing scheme[9] fails under motion to strike analysis. InLowell, the court recognized that vertical price-fixing involvedconspiracies between retailers, distributors and manufacturers to maintain artificially high resale prices. Conversely, Vacco claims that Microsoft unilaterally set a price that it imposed on hardware manufacturers and direct software purchasers. In the absence of an alleged conspiracy, his complaint is not consistent with a vertical price-fixing scheme.
Accordingly, for all of the above reasons, Microsoft's motion to strike is granted as to count I.
Vacco also includes two CUTPA claims in his complaint, which Microsoft has moved to strike. For the following reasons, the CUTPA claims also are stricken.
In a case analogous to this one, Sorisio v. Lenox, 701 F. Sup. 950
(D. Conn.), aff'd, 863 F.2d 195 (2nd Cir. 1988), the district court dismissed antitrust claims, and also dismissed a CUTPA claim, where it was found that the plaintiff's CUTPA claim did not allege any conduct beyond that involved in the antitrust claims. Vacco argues that even if he is not permitted to maintain an antitrust action, the alleged conduct by Microsoft constitutes a violation of or is contrary to the spirit of the antitrust laws and therefore is actionable under CUTPA. Vacco does not offer any direct authority for his proposition that allegations failing to state an antitrust claim may nonetheless constitute a CUTPA violation. Such a result would be contrary to United States Supreme Court authority, as discussed above, and would undermine the Supreme Court's policy choices in its interpretation of federal antitrust law, which this court is directed to follow. The court has no authority to embark on a path opposing our state legislative mandate to harmonize state and federal antitrust law in accordance with the Supreme Court's holding in IllinoisBrick. Accordingly, Vacco's CTJTPA claims are stricken.
 CONCLUSION
The motion to strike is granted as to all three counts of the complaint. CT Page 12452
ROBERT F. McWEENY, J.