LUCAS AUTOMOTIVE
ENGINEERING, INC.,
Plaintiff–Appellant,

v.

BRIDGESTONE/FIRESTONE,
INC., Defendant,

and

Coker Tire Company, Defendant–
Appellee.

No. 99–56761.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 2001

Filed Dec. 26, 2001

Maxwell M. Blecher, John E. Andrews, Blecher & Collins, Los Angeles, California, for the plaintiff-appellant.

Kent B. Goss, Jason Erb, Pillsbury, Madison & Sutro, Los Angeles, California; T. Maxfield Bahner, Anthony A. Jackson, Chambliss, Bahner & Stophel, Chattanooga, Tennessee, for the defendant-appellee.

Before: BOOCHEVER and SILVERMAN, Circuit Judges, and GEORGE, Senior District Judge.[*]

GEORGE, Senior District Judge:

Lucas Automotive Engineering, Inc. ("Lucas Automotive") appeals the district court's grant of summary judgment to Coker Tire Company, Inc. ("Coker Tire"). We have jurisdiction pursuant to 28 U.S.C. § 1291.

I.

The following statement of facts is taken in part from this court's decision in *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228 (9th Cir.1998). Coker Tire and Lucas Automotive sell vintage automobile tires to customers worldwide. Vintage tires are different from tires used on modern automobiles in terms of their size, dimensions, structure, design and manufacturing. Vintage tires are characterized by an appearance that is authentic to a varying degree to the tires which were originally sold on vintage, antique and collectors cars, and are available through specialty tire channels of distribution. Firestone Tire and Rubber Company of New Zealand, Inc. ("FNZ"), a subsidiary of Bridgestone/Firestone, Inc. ("BFI"), manufactured the Firestone vintage tires in New Zealand, and supplied them to Lucas Automotive for sale and distribution.

Prior to August 1991, Lucas Automotive and Coker Tire shared distribution rights to Firestone brand vintage tires. Coker Tire distributed Firestone brand vintage tires for high-performance cars made primarily in the 1960's and early 1970's. Lucas Automotive distributed Firestone brand vintage tires for older cars. Vintage tire production became unprofitable for FNZ in the late 1980's, and it decided to cease manufacturing vintage tires in New Zealand. BFI put the Firestone vintage tire distribution rights up for bid to Lucas Automotive and Coker Tire, and in January 1992, awarded the exclusive distribution rights to Coker Tire.

In August 1993, Lucas Automotive filed suit against BFI, FNZ and Coker Tire alleging, among other claims, federal antitrust violations. According to the complaint, Coker Tire, BFI and FNZ had conspired to monopolize the worldwide market for vintage automobile tires in violation of § 2 of the Sherman Act, 15 U.S.C. § 2.

[*] Honorable Lloyd D. George, Senior United States District Judge, District of Nevada, sitting by designation.

The complaint also alleged that Coker Tire's acquisition of vintage tire molds and exclusive distribution rights for Firestone vintage tires violated § 7 of the Clayton Act,[1] in that the acquisition would substantially lessen competition and create a monopoly in the marketing and sale of these tires throughout the world.

In February 1995, the district court granted summary judgment to BFI and FNZ, and in October 1995, granted summary judgment in favor of Coker Tire. Lucas Automotive appealed the ruling in favor of Coker Tire, and in 1998, the Ninth Circuit reversed the district court's grant of summary judgment to Coker Tire on Lucas Automotive's claim for equitable relief under the Clayton Act. *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228 (9th Cir.1998) ("*Lucas I*"). The *Lucas I* court held that Lucas Automotive had presented sufficient facts to make out a *prima facie* case that "Coker has monopoly power in the marketing and sale of vintage tires in the United States with the power to exclude competition and raise prices." *Id.* at 1236.[2] In arriving at that conclusion, the *Lucas I* court accepted the district court's assumption that "the relevant market is limited to original equipment brand name vintage tires." *Id.* at 1230. After remand to the district court, Coker Tire moved for summary judgment on the ground that Lucas Automotive had not shown a submarket for original equipment major brand vintage

tires. In October 1999, the district court granted Coker Tire's motion. This appeal followed.

■ We review a grant of summary judgment *de novo. Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1432 (9th Cir.), *cert. denied*, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Berry v. Valence Tech., Inc.*, 175 F.3d 699, 703 (9th Cir.), *cert. denied*, 528 U.S. 1019, 120 S.Ct. 528, 145 L.Ed.2d 409 (1999).

## II.

Lucas Automotive's major contention is that the relevant market for purposes of this action is limited to original equipment major brand vintage tires. These tires bear the trademarks of tires which originally were sold on vintage cars. Private label brand tires, on the other hand, bear various other trade names which did not exist at the time most vintage cars were made. For American cars, the original equipment major brands in vintage tires are Firestone, B.F. Goodrich, U.S. Royal and Goodyear. Following Coker Tire's acquisition of the Firestone distributorship, Coker Tire became the exclusive supplier for all of the original equipment brands

---

1. Section 7 of the Clayton Act, 15 U.S.C. § 18, provides in pertinent part:

    No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where ... the effect of such acquisition may be sub-

stantially to lessen competition, or to tend to create a monopoly.

2. As to this conclusion, one panelist dissented, arguing that the record was sufficient to show that Lucas Automotive could not meet its burden to demonstrate that Coker Tire had the market power to restrict output and raise prices without a competitive response. *Lucas I*, 140 F.3d at 1237–38 (O'Scannlain, J., dissenting).

except Goodyear, which comprises less than 10% of the market. There is evidence that Coker Tire controls approximately 75% of the vintage tire market and 90% of the original equipment market. *Lucas I*, 140 F.3d at 1236.

Coker Tire maintains that the relevant market should be defined as all tire manufacturing capacity which can be used to produce replacement tires for vintage automobiles. This would include both original equipment major brand and private label brand vintage tires. The district court found that Lucas Automotive failed to demonstrate a cognizable submarket in original equipment major brand vintage replacement tires. Accordingly, the district court analyzed Lucas Automotive's burden of demonstrating a circumstantial case of market power within the broader range of all vintage tire manufacturing suggested by Coker Tire. Applying that market definition, the district court concluded that Lucas Automotive had not shown either that Coker Tire owns a dominant share of the market, or that there are significant barriers to entry and existing competitors lack the capacity to increase their output in the short run.

## A.

■ In a § 7 case, the relevant market must be defined in order to evaluate the competitive consequences of an alleged restraint of trade. *Gough v. Rossmoor Corp.*, 585 F.2d 381, 389 (9th Cir.), *cert. denied*, 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979). We consider initially whether the district court correctly determined that the relevant market included both original equipment major brand and private label vintage replacement tires. Lucas Automotive makes two arguments against the district court's determination. First, Lucas Automotive asserts that the district court violated the law of the case

by re-examining market definition in light of the *Lucas I* court's holding that Lucas Automotive had made out a *prima facie* case that Coker Tire had monopoly power in the marketing and sale of vintage tires. Second, Lucas Automotive contends that even if the *Lucas I* court's holding did not define the relevant market, the district court should have found that Lucas Automotive had raised a triable issue of fact concerning the relevant market.

### 1.

Lucas Automotive maintains that the *Lucas I* court held that it made a sufficient showing to support a judgment for equitable relief under § 7, which precluded the district court from reconsidering the relevant market. In the district court's February 1995 order granting summary judgment which was reviewed in *Lucas I*, the district court stated that "[f]or purposes of this motion, the Court will assume that the relevant market is limited to original equipment brand name vintage tires." In its opinion, the *Lucas I* court noted, "Lucas alleges that the relevant market for purposes of this action is limited to original equipment ("OE") major brand vintage tires.... Following the district court, we assume that the relevant market is limited to original equipment brand name tires." *Lucas I*, 140 F.3d at 1230.

■ Under the law-of-the-case doctrine, a court will not reexamine an issue previously decided by the same or higher court in the same case. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 146 F.3d 1088, 1093 (9th Cir.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). Here, however, the *Lucas I* court did not reach the merits of market definition; rather it adopted the district court's assumption in order to develop its analysis of Coker Tire's market power. The *Lucas I* court's assessment that Lucas Automotive had es-

tablished a prima facie case of a § 7 violation was therefore distinct from an examination of the definition of a submarket in original equipment major brand vintage tires, which the *Lucas I* court did not address. Therefore, the district court did not err in revisiting the question of the boundaries of the relevant market. *See Mirchandani v. United States*, 836 F.2d 1223, 1225 (9th Cir.1988) (the law-of-the-case doctrine is not applicable where the previous decision did not reach the merits).

### 2.

▮▮▮ Lucas Automotive also claims that it raised a triable issue of fact regarding the existence of a submarket in original equipment major brand vintage tires. In a § 7 case, the process of product market definition is as follows:

> "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, [370 U.S. 294, 325 (1962) ] (footnote omitted). Where an increase in the price of one product leads to an increase in demand for another, both products should be included in the relevant product market.

*Olin Corp. v. F.T.C.*, 986 F.2d 1295, 1298 (9th Cir.1993) (citing *California v. American Stores Co.*, 872 F.2d 837, 841 (9th Cir.1989), *rev'd on other grounds*, 495 U.S. 271, 110 S.Ct. 1853, 109 L.Ed.2d 240 (1990), *reinstated in relevant part*, 930 F.2d 776, 777 (9th Cir. 1991)), *cert. denied*, 510 U.S. 1110, 114 S.Ct. 1051, 127 L.Ed.2d 373 (1994). The determination of what constitutes the relevant product market hinges, therefore, on a determination of those products to which consumers will turn, given reasonable variations in price.

Lucas Automotive submits that original equipment major brand vintage tires do not compete with private brand vintage tires. In essence, Lucas Automotive argues that original equipment major brand tires are the "cream" of the vintage tire market and are a sufficiently separate part of the trade or commerce to constitute a relevant submarket. *See International Boxing Club of New York v. United States*, 358 U.S. 242, 252, 79 S.Ct. 245, 3 L.Ed.2d 270 (1959)(championship boxing is the cream of boxing business). According to Lucas Automotive, original equipment tires have peculiar characteristics and uses, particularly for shows and competition where authenticity is important, have appeal to a distinct customer base, have a distinct pricing structure, and are not sensitive to price changes as are private label vintage tires.

To support its argument of a separate market for original equipment major brand vintage tires, Lucas Automotive relied upon (1) the declaration of Joseph Coker (sealed), (2) the declaration of William Smith (sealed), (3) Coker Tire's own advertising, (4) deposition testimony of independent distributors, (5) the declarations of Stanley Lucas, and (6) the declaration containing manufacturing production data from two manufacturers of bias ply tires (sealed). The district court rejected this evidence as conclusory and self-serving. This evidence, however, cannot be so easily dismissed.

Among these exhibits submitted by Lucas Automotive are the assertions that certain tire customers have a preference or strong preference for original equipment vintage tires, and that one segment of customers insists on replacement tires which are duplicative of the tires that were originally on their particular vehicle. This last segment of customers is generally not concerned with price. In commenting on the purchasing behavior of members of the Antique Automobile Club of America, one declarant estimates that fully one-third of

the membership would demand original equipment tires and be willing to pay far more for those tires. The Lucas declaration specifically asserts that more than half of the antique car customers absolutely insist upon original equipment major brand tires; and Coker Tire's own advertising markets original 17311 equipment replacement tires to enthusiasts interested in authenticity.

■ We find that this evidence is sufficient to raise a genuine issue of material fact whether the authentic nature of original equipment major brand tires results in a distinct customer base and pricing structure that would not respond to monopolistic conduct by purchasing private label brand tires as a substitute.[3] Like the district court below, we recognize that the Supreme Court in *Brown Shoe* identified several criteria to consider in determining whether a submarket exists: unique production facilities, specialized vendors, industry or public recognition of the submarket as a separate economic entity, distinct customers and sensitivity to price changes. 370 U.S. at 326, 82 S.Ct. 1502. However, unlike the district court, we find sufficient correlation between the *Brown Shoe* criteria and the facts submitted by Lucas Automotive to raise an issue of fact. Lucas Automotive's exhibits suggest that manufacturers, retailers and purchasers recognize original equipment major brand vintage tires as a separate economic entity from private label tires. Furthermore, a legitimate inference can

be drawn between the categorical insistence of customers on, and to some degree their very strong preference for, original equipment major brand tires and the expectation that should the price of such original equipment major brand vintage tires be increased, these customers would nonetheless purchase the now-costlier version rather than substitute a less expensive, less authentic model. Because such genuine issues of material fact exist regarding the boundaries of the relevant market, the district court's grant of summary judgment was not appropriate.[4]

## B.

■ Lucas Automotive also argues that it has established the existence of a cluster market consisting of a range of different sizes of vintage tires. A cluster market is recognized "where the product package is significantly different from, and appeals to buyers on a different basis from, the individual products considered separately." *J.B.L. Enterprises, Inc. v. JBL Enterprises, Inc.*, 698 F.2d 1011, 1016–17 (9th Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 106, 78 L.Ed.2d 109 (1983). Here, Lucas Automotive made no showing that consumers of vintage replacement tires purchase such tires in packages composed of different tire sizes. Nor has Lucas Automotive shown that even assuming distributors purchase vintage tires in groups of different sizes, they would purchase only in groups of either original equipment

---

**3.** The declarations submitted by Lucas Automotive are, as the district court noted, self-serving. However, *that a statement is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact. United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999). Here, the declarations are based on personal experience in the industry, and as such, have a basis in fact. Therefore, they must be taken as true for purposes of deter-

mining whether there is a genuine issue of fact precluding summary judgment. *Id.*

**4.** As the determination of market power naturally must be made within the context of the relevant market, we do not review the district court's determination that Lucas Automotive failed to establish the lack of barriers to entry and competitors' lack of capacity to increase their output in the short run.

major brands or private label brands. Indeed, the advertising cited by Lucas Automotive in support of its cluster-market argument includes both original equipment major brand and private brand labels. Thus, the district court was correct in concluding that the evidence does not support a cluster-market theory.

## III.

 The district court imposed sanctions when Stanley Lucas, President of Lucas Automotive, failed to attend a mediation session. Lucas Automotive claims that Lucas missed the session because he was suffering from an incapacitating headache, and that his failure to appear was not intentional.

However, inasmuch as Lucas did not notify the parties beforehand of his nonappearance, the district court's imposition of sanctions pursuant to Fed.R.Civ.P. 16 and the local rules for the Central District of California was appropriate.

## IV.

We REVERSE the district court's grant of summary judgment, and REMAND for further proceedings consistent with this opinion. We AFFIRM the district court's imposition of sanctions for Stanley Lucas' failure to attend the mediation session.